J-S19028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHARLES WESLEY HENNING, III | |
| Appellant | No. 1686 EDA 2015 |

Appeal from the Order entered May 12, 2015
In the Court of Common Pleas of Monroe County
Criminal Division at No: CP-45-SA-0000015-2015

BEFORE: BENDER, P.J.E., STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.: **FILED JUNE 08, 2016**

Appellant, Charles Wesley Henning, III, appeals from the May 12, 2015 order entered in the Court of Common Pleas of Monroe County, denying the appeal of his summary conviction for driving with a license DUI suspended under 75 Pa.C.S.A. § 1543(b).[1] Following review, we affirm.

---

[1] 75 Pa.C.S.A. § 1543(b), relating to driving while operating privileges are suspended or revoked, provides, in relevant part:

> (1) A person who drives a motor vehicle on a highway or trafficway of this Commonwealth at a time when the person's operating privilege is suspended or revoked as a condition of acceptance of Accelerated Rehabilitative Disposition for a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) . . . shall, upon conviction, be guilty of a summary offense and shall be sentenced to pay a fine of $500 and to undergo imprisonment for a period of not less than 60 days nor more than 90 days.

*(Footnote Continued Next Page)*

The trial court summarized the testimony presented at Appellant's May 12, 2015 summary appeal hearing as follows:

Sergeant Jeffrey Bowman is a patrol sergeant with Pocono Mountain Regional Police Department (PMRPD) and has worked there since 1990. On December 10, 2014, Sgt. Bowman was working a routine patrol on the 7:00 [a.m.] to 3:00 [p.m.] shift. Sgt. Bowman testified that the week prior to that date, he received information at roll call that [Appellant] had a DUI suspension and had been seen operating a motor vehicle. On December 10, 2014, while monitoring traffic, Sgt. Bowman saw a vehicle that he knew belonged to [Appellant], and observed [Appellant] driving the vehicle. Sgt. Bowman then stopped the vehicle and made contact with [Appellant].

Sgt. Bowman asked [Appellant] for his license and registration and [Appellant] acknowledged to Sgt. Bowman he did not have his license as it was still under suspension. [Appellant] went on to explain to Sgt. Bowman that he was supposed to have an ignition interlock and had not been able to get that taken care of yet. Sgt. Bowman then pulled up [Appellant's] driving record on the MVP of the patrol car to confirm the suspension was still in effect,[2] and then issued [Appellant] a citation for driving while license was under suspension.

[Appellant] testified that he initially had a sixty (60) day license suspension from an ARD in 2013. [Appellant] testified he contacted PennDOT concerning restoration of his license, but they were still processing it. [Appellant] was aware that another attorney was challenging an additional twelve (12) month

(Footnote Continued) _____

[2] Appellant's Certified Driver's History obtained by Sgt. Bowman on the morning of the traffic stop was admitted into evidence during Appellant's May 12, 2015 hearing and reflects that Appellant violated 75 Pa.C.S.A. § 3802 on October 8, 2012; that his suspension was effective January 23, 2013; that notice was mailed to Appellant on February 13, 2013; and that PennDOT received Appellant's license on January 23, 2013. Notes of Testimony, Hearing, 5/12/15, Exhibit 1.

suspension he received. [Appellant] testified he received a notice from PennDOT dated December 10, 2014, the same date of his traffic stop, that he was required to have an ignition interlock. [Appellant] admitted he did not receive anything from PennDOT that his license had been reinstated nor did he receive his license back prior to December 10, 2014. He also acknowledged he received the letter regarding the ignition interlock a few days after the traffic stop.

Officer Jason Wile also testified in this case. He has been an officer at [PMRPD] since 2009. Officer Wile also knew [Appellant] and was familiar with the status of [Appellant's] driver's license in 2014. Officer Wile testified that he received an anonymous tip that [Appellant] was driving while his license was DUI suspended. Officer Wile then checked with the (Monroe County) Control Center to verify [Appellant's] license was DUI suspended. The Control Center confirmed the DUI suspension was still in effect. Officer Wile then informed all of the officers on the day shift, including Sgt. Bowman, of [Appellant's] DUI suspension.

Trial Court Rule 1925(a) Opinion ("Rule 1925(a) Opinion"), 7/9/15, at 2-3 (references to notes of testimony omitted).

By order entered at the conclusion of the hearing, Appellant was sentenced to 90 days in the Monroe County Correctional Facility and a fine of $500.00. Trial Court Order, 5/12/15, at 1. In the event of an appeal, the sentence would be delayed pending conclusion of the appeal. *Id.* This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents two questions for our consideration, both of which are fairly embodied in his Rule 1925(b) statement of errors complained of on appeal. The issues as set forth in his brief are:

I.    Did the Commonwealth present sufficient evidence to prove beyond a reasonable doubt that Appellant had actual notice of a DUI related suspension?

II.   Did the honorable trial court improperly deny [Appellant's] summary appeal when at the time of the stop the officer did not have a "reasonable suspicion" to suspect a violation of the Motor Vehicle Code?

Appellant's Brief at 4.

Appellant's first issue involves a sufficiency of evidence challenge. This Court has recognized that the scope of our review in a license suspension case "is whether the trial court's findings are supported by competent evidence of record and whether an error of law or abuse of discretion was committed." *Commonwealth v. Brewington*, 779 A.2d 525, 526 (Pa. Super. 2001) (citing *Commonwealth v. Baer*, 682 A.2d 802, 804-05 (Pa. Super. 1996)). "We must determine if there was sufficient evidence to enable the fact finder to find every element of the crime beyond a reasonable doubt." *Id.* at 527. Further:

> When faced with a challenge to the sufficiency of the evidence to support a conviction, the appellate court must view the evidence adduced at trial in the light most favorable to the verdict winner. The Commonwealth, as verdict winner, is entitled to all favorable inferences which may be drawn from the evidence. If the trier of fact could have reasonably determined from the evidence that all the necessary elements of the crime were established, then the evidence will be deemed sufficient to support the verdict.

*Baer*, 682 A.2d at 804-05 (Pa. Super. 1996) (citations omitted).

"In order to uphold a § 1543(b) conviction, the Commonwealth must establish that the defendant had actual notice that his license was

suspended." ***Brewington***, 779 A.2d at 527 (citation and footnote omitted).

As in ***Brewington***, it is the "actual notice" element Appellant claims was not

established. In ***Brewington***, we recognized that "actual notice may take

the form of a collection of facts and circumstances that allow that fact finder

to infer that a defendant has knowledge of suspension." ***Id.*** (citations and

internal quotations omitted). ***See also Commonwealth v. Crockford***, 660

A.2d 1326, 1331 (Pa. Super. 1995) (*en banc*), *appeal denied*, 670 A.2d 140

(Pa. 1995).

> In ***Baer***, this Court stated:
>
> Proof that a notice of suspension was merely mailed to an appellant is not, standing alone, sufficient to establish beyond a reasonable doubt that he or she had actual notice of the suspension. Only where additional evidence exists to indicate that an appellant received actual notice of suspension, will the evidence be viewed as sufficient to prove actual notice.

***Baer***, 682 A.2d at 805 (citations omitted). Our Supreme Court has

identified several factors that may be considered by the fact finder when

determining whether a defendant had actual notice, including a statement by

the defendant acknowledging that he was driving during a suspension period

or evidence that PennDOT mailed notice of suspension to the defendant.

***Commonwealth v. Zimmick***, 653 A.2d 1217, 1221 (Pa. 1995).

In this case, we find the Commonwealth has met its burden of proving

beyond a reasonable doubt that Appellant did have notice that his license

was suspended. As noted, Appellant's Certified Driving History was admitted

into evidence at his summary appeal hearing. The record reflects that

PennDOT mailed a notice of suspension to Appellant on February 13, 2013. The Commonwealth also presented testimony from Sgt. Bowman indicating that Appellant acknowledged notice of his suspension during the December 10, 2014 traffic stop as reflected in the following exchange with counsel for the Commonwealth:

Q. Did you have any conversation with [Appellant] at that time?

A. I did. I asked him for his license and registration. He searched around for his registration. I asked him about his driver's license. He said he didn't have it. I said why don't you have it? He said, well, it's still under suspension. I said then why are you driving? He tried to explain to me that he was supposed to have an ignition interlock and he hasn't been able to get that taken care of yet.

So I said, well, then why are you driving today? He told me that he had to go and get tires on his truck. As a result of that, I returned to my patrol car and prepared two traffic citations. One for his license being expired and the second one for being under DUI suspension.

Notes of Testimony, Hearing, 5/12/15, at 4-5.

Considering the Certified Driver's History from PennDOT and Sgt. Bowman's testimony, which the trial court found credible, *see* Rule 1925(a) Opinion, 7/9/15, at 6, and considering the evidence in a light most favorable to the Commonwealth as verdict winner, the Commonwealth has satisfied its burden of proof that Appellant had notice that his driver's license was suspended as of the time of the December 10, 2014 traffic stop. Finding no error of law or abuse of discretion on the part of the trial court with respect to Appellant's first issue, we shall not disturb the trial court's determination.

In his second issue, Appellant contends the trial court improperly denied his summary appeal because Sgt. Bowman did not have "reasonable suspicion" to suspect a violation of the Motor Vehicle Code. As Appellant properly notes, "[r]easonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest and it depends on the information possessed by police and its degree of reliability and the totality of the circumstances." Appellant's Brief at 18.

In **Commonwealth v. Shabazz**, 18 A.3d 1217 (Pa. Super. 2011), this Court reiterated:

> The issue of what quantum of cause a police officer must possess in order to conduct a vehicle stop based on a possible violation of the Motor Vehicle Code is a question of law, over which our scope of review is plenary and our standard of review is *de novo*.

**Id.** at 1219-20 (quoting **Commonwealth v. Holmes**, 14 A.3d 89, 94 (Pa. 2011)). Further:

> The Vehicle Code permits a police officer to initiate a traffic stop when he or she possesses reasonable suspicion that a section of the Code has been or is being violated.
>
> § 6308. Investigation by police officers
>
> (b) Authority of police officer.—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308. The Commonwealth bears the burden of establishing the validity of the stop. "Thus, under the present version of Section 6308(b), in order to establish reasonable suspicion, an officer must be able to point to *specific and articulable facts* which led him to reasonably suspect a violation of the Motor Vehicle Code . . . ."

*Id.* at 1220 (quoting **Holmes**, 14 A.3d at 95-96) (emphasis in original).

In **Commonwealth v. Brown**, 996 A.2d 473 (Pa. 2010), our Supreme Court explained:

> While warrantless seizures such as a vehicle stop are generally prohibited, they are permissible if they fall within one of a few well-delineated exceptions. One such exception allows police officers to detain individuals for a brief investigation when they possess reasonable suspicion that criminal activity is afoot. Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.
>
> . . . .
>
> An anonymous tip, corroborated by independent police investigation, may exhibit sufficient indicia of reliability to supply reasonable suspicion for an investigatory stop. **Alabama v. White**, 496 U.S. 325, 331, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). However, we have recognized a known informant is far less likely to produce false information. A known informant's tip may carry sufficient indicia of reliability to justify an investigative detention despite the fact that it may prove insufficient to support an arrest or search warrant.

*Id.* at 476-77 (citations and internal quotations omitted).

The trial court agreed with the Commonwealth that reasonable suspicion existed in this case, concluding:

> Sgt. Bowman both knew that the vehicle he saw was owned by an individual whose driving privileges were suspended **and** he recognized the driver as the person whose driving privileges were suspended. He knew this information as a result of information related to him by Officer Wile at a recent roll call. Based on the totality of the circumstances, Sgt. Bowman had articulable and reasonable grounds for the stop.
>
> [Appellant] has argued that the information Sgt. Bowman had was based upon hearsay, and therefore unreliable. Police officers may have reasonable suspicion, without personal observation, from third party information, including a tip from a citizen. Anonymous tips typically also require an independent basis.
>
> . . . .
>
> In this case, an anonymous call (or perhaps not anonymous—the testimony was unclear) indicated [Appellant] was driving a vehicle while his license was DUI suspended. Officer Wile corroborated this information by confirming through the Monroe County Control Center that [Appellant's] license was DUI suspended. This was an independent verification of the suspension. The information was conveyed by Officer Wile to Sgt. Bowman at a roll call. Sgt. Bowman then independently observed [Appellant] driving a vehicle, at a time the Sgt. Bowman had reason to believe [Appellant's] driver's license was DUI suspended. We found this constituted reasonable suspicion.

Rule 1925(a) Opinion, 7/9/15, at 4-5 (emphasis is original; citations omitted).

We find no error of law or abuse of discretion in the trial court's determination that reasonable suspicion existed, warranting initiation of a traffic stop. Appellant's second issue does not provide any basis for relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/2016